```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
SI MEAT VILLAGE, INC.,

        Plaintiff/Counter-Defendant,
                                                **MEMORANDUM AND ORDER**
        -against-                                No. 14-CV-7324-FB-VMS

AMGUARD INSURANCE
COMPANY,

        Defendant/Counter-Claimant.
------------------------------------------------x
```

*Appearances:*
*For the Plaintiff:*            *For the Defendants:*
CRAIG A. BLUMBERG, ESQ.         STEPHEN M. LAZARE, ESQ.
15 Maiden Lane, 20th Floor      YALE GLAZER, ESQ.
New York, New York 10038        Lazare Potter & Giacovas LLP
                                875 Third Avenue, 28th Floor
                                New York, New York 10022

**BLOCK, Senior District Judge:**

Si Meat Village, Inc., seeks recovery from its insurer, AmGuard Insurance Company, for property damage and lost income due to a fire. AmGuard moves for summary judgment on that claim. For the following reasons, the motion is granted.[1]

---

[1] In its reply memorandum, AmGuard asks the court to enter judgment on its counterclaim for money it paid under the policy to a third party whose property was damaged in the fire. However, AmGuard's initial memorandum did not request that relief, and the Court cannot grant summary judgment on an issue unless the opposing party has had a fair opportunity to address it. *Cf. Hispanics for Fair & Equitable Reapportionment (H-FERA) v. Griffin,* 958 F.3d 24, 25 (2d Cir. 1992) ("We cannot in good conscience affirm a summary judgment if we are not satisfied that the appellant had been given an opportunity upon notice to oppose the grant below.").

# I

The policy at issue includes what is known as a "protective safeguards endorsement," which required Si Meat to maintain an automatic fire alarm on the premises. The policy explicitly excludes losses due to fire "if, prior to the fire, [the policyholder f]ailed to maintain any protective safeguard listed in the Schedule above, and over which [the policyholder] had control, in complete working order." Decl. of Paul Prislupsky, Ex. A-1. It is undisputed that there was no fire alarm at the premises.

The application for coverage, submitted by an insurance broker, represented that there was a fire alarm on the premises. In addition, AmGuard commissioned two inspections of the premises, one shortly after the policy was issued and a second when it came up for renewal. Raymond Hagemann, an independent contractor, conducted both inspections. During each inspection, he asked Si Meat's principal, Ziad Abdeldayum, if there was a working fire alarm on the premises and was told that there was.

Hagemann did not independently verify Abdeldayum's representations. He stated at his deposition that he had "no specific intention to look" for a fire alarm, and did not remember seeing any alarm equipment on the premises. Hagemann Dep. 65, 70. He further stated that "the existence of [such] equipment doesn't necessarily mean that the equipment is functional, is turned on, is operational." *Id.* at 49.

2

In its statement pursuant to Local Rule 56.1, Si Meat denied making any representations to AmGuard or its inspector regarding the presence of a fire alarm. However, the rule requires that "each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible." E.D.N.Y. R. 56.1(d). As confirmed at oral argument, there is no evidence controverting AmGuard's and Hagemann's statements. Accordingly, the Court accepts them as undisputed. *See id.* R. 56.1(c).

## II

Jurisdiction in this case is premised on diversity, and the parties agree that New York substantive law governs. That law categorizes a protective safeguard endorsement as a warranty by the insured, *see Triple Diamond Cafe, Inc. v. Those Certain Underwriters at Lloyd's London*, 3 N.Y.S.2d 46, 49 (2d Dep't 2015) (promise to keep burglar alarm operational "meets the definition of a warranty pursuant to the Insurance Law"), and a breach of the warranty voids coverage as long as the breach "materially increases the risk of loss, damage or injury within the coverage of the contract," N.Y. Ins. L. § 3106(b). There is no requirement that the breach be intentional or knowing; "even innocent misrepresentations, if material, are sufficient to allow an insurer to defeat recovery under the insurance contract." *Kulikowski v. Roslyn Sav. Bank*, 503 N.Y.S.2d 863, 864 (2d Dep't 1986).

Si Meat concedes both the breach and its materiality. It argues, however, that AmGuard either waived the protective safeguards endorsement or is estopped from relying on it. It bases both theories on a contention that Hagemann negligently inspected the premises, and that a reasonably competent inspection would have revealed the lack of a fire alarm.

"Waiver and estoppel are distinct in New York insurance law." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002). Waiver "is the voluntary and intentional relinquishment of a contract right." *Stassa v. Stassa*, 999 N.Y.S.2d 116, 119 (2d Dep't 2014). As such, it requires "full knowledge of the facts upon which the existence of the right depends." *Amrep Corp. v. American Home Assurance Co.*, 440 N.Y.S.2d 244, 247 (1st Dep't 1981). Si Meat does not claim that AmGuard had actual knowledge that there was no fire alarm at the premises, and Hagemann's failure to learn the true state of affairs is not an adequate substitute. *See Peck v. Peck*, 649 N.Y.S.2d 22, 23 (2d Dep't 1996) ("[W]aiver is not created by negligence, oversight, or thoughtlessness[.]"). Thus, there was no waiver.

"Estoppel . . . arises where an insurer acts in a manner inconsistent with a lack of coverage, and the insured reasonably relies on those actions to its detriment." *Burt Rigid Box*, 302 F.2d at 95. Two cases cited by the plaintiff apply that principle. In *Tasty Candy Products, Inc. v. Great Eastern Insurance Co.*, 285 N.Y.S.2d 160 (1st Dep't 1967), the insurer was aware of changes to the insured's property but

4

"continued to accept premiums up until the time of the fires in question, and paid out on a prior claim and never sought to alter or cancel the policies issued to the plaintiff." *Id.* at 162. While AmGuard likewise renewed Si Meat's policy, it did not—as noted—have actual knowledge that there was not a fire alarm on the premises. As with waiver, an insurer's conduct works an estoppel only where the insurer has full knowledge of the facts. *See Amrep Corp.*, 440 N.Y.S.2d at 247 ("The same principles apply where [the insured seeks] to estop the insurer from rescinding a policy because of the fraud of the insured on the ground that the insurer had knowledge of the facts and took no action.").

In the second case cited by Si Meat, *Val Drugs, Inc. v. Lynn*, 402 F. Supp. 174 (W.D.N.Y. 1975), the insurer delayed processing a claim for a loss due to burglary. While the claim was pending, a second burglary occurred. The court held that the insurer could lawfully deny coverage for the first burglary based on the insured's failure to maintain a burglar alarm. With respect to the second burglary, however, it reached the opposite conclusion:

> Had the defendant acted promptly on plaintiff's first claim, plaintiff would have had the opportunity either to secure coverage elsewhere or to make the necessary adjustments to come within the protective device requirements. . . . [The insurer's] failure to process plaintiff's claim and to inform plaintiff that he was not covered within a reasonable period of time estops the company from denying coverage on the second burglary.

5

*Id.* at 177. The court reasoned that the first burglary "in effect amounted to notice of the failure of the plaintiff to conform [to] the protective device requirements since an inquiry pursued with ordinary diligence and understanding would have disclosed the same." *Id*.

The unique circumstances of *Val Drugs* are not present here. There was no prior fire to put AmGuard on inquiry notice that Si Meat was not complying with the protective safeguards endorsement. And since there was no prior fire, there was no prior claim for loss due to fire. Therefore, Si Meat could not have reasonably relied on AmGuard's conduct in processing such a claim to conclude that it was covered.

New York law is clear that "negligence in not making further inquiry" is "not the equivalent of knowledge." *Cherkes v. Postal Life Ins. Co.*, 138 N.Y.S.2d 788, 790 (1st Dept. 1955). Something more—something "tantamount to notice"—is required. *Id.* Otherwise, an insurer is "entitled to rely upon the insured's representations," and further inquiry by the insurer is "optional." *Id*.

Si Meats attempts to avoid that rule on the ground that AmGuard did undertake "further inquiry" in the form of inspections, and it should be charged with knowledge of what those inspections would have revealed had they been competently performed. "[O]ne who assumes to act, even though not obligated to do so, may thereby become subject to the duty to act carefully." *Jansen v. Fidelity & Cas. Co.*, 79 N.Y.2d 867, 868 (1992). That principle, however, "has been limited to those situations wherein the

action taken is for the benefit of another and not in furtherance of the interest of the one who assumes to act." *Id.* (internal quotation marks and citation omitted). In other words, Si Meats could rely on the inspections to absolve it of its own responsibility to comply with the protective safeguards endorsement only if the inspections had been conducted for the benefit of Si Meats. On the contrary, it is generally understood that an insurer conducts inspections for its own benefit. *See, e.g., id.* ("[I]t is apparent that the safety inspections were undertaken solely for defendant's own underwriting purposes—to reduce the risks that might give rise to liability under the policy."). Nothing in the record here intimates that AmGuard's inspections were intended to benefit Si Meat.

### III

The Court is mindful that Si Meats has suffered a significant loss, and it takes no issue with Abdeldayum's assertion that he honestly believed there was a fire alarm on the premises. Nevertheless, the law is clear that Si Meats bore the responsibility of complying with the protective safeguards endorsement. If there were a genuine dispute of fact as to whether AmGuard had actual notice, or even inquiry notice based on suspicious circumstances, waiver or estoppel might excuse Si Meat's breach of warranty. But there is no evidence to support an inference of such knowledge, and, as explained above, constructive knowledge—what AmGuard *would* have learned but for Hagemann's alleged negligence—is not sufficient.

Accordingly, the Court concludes that AmGuard has not waived the protective safeguards endorsement, and is not estopped from invoking it. AmGuard's motion for summary judgment on Si Meat's claim for coverage is granted. The case shall proceed on AmGuard's counterclaim for reimbursement of payments to third parties under the policy.

**SO ORDERED**.

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 23, 2016